# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| OLYMPIC TUG & BARGE, INC. a Washington corporation, and HARLEY MARINE FINANCING, LLC, a Delaware limited liability company,<br><br>Plaintiffs,<br><br>v.<br><br>LOVEL BRIERE, LLC, a Nevada limited liability company,<br><br>Defendant. | IN ADMIRALTY<br><br>NO.<br><br>COMPLAINT |

Plaintiffs, Olympic Tug & Barge, Inc. ("Olympic"), a Washington corporation, and Harley Marine Financing, LLC ("HMF"), a Delaware limited-liability company, allege as follows:

## I. PARTIES

1. Olympic is a corporation domiciled in the State of Washington with its principal place of business in Seattle, Washington.

2. HMF is a limited-liability company domiciled in the State of Delaware with its principal place of business in Seattle, Washington.

{MEG/006/02985692-1}
COMPLAINT - 1

MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
5500 COLUMBIA CENTER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

3. Defendant Lovel Briere, LLC ("Lovel"), is a limited-liability company domiciled in the State of Nevada with its principal place of business in Seattle, Washington.

## II. JURISDICTION

4. This Court has subject matter jurisdiction over this matter as an admiralty and maritime claim pursuant to the Court's admiralty jurisdiction under 28 U.S.C. § 1333(1). The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 2201 for a declaratory judgment of the rights and obligations of the parties under the bareboat charter agreement entered into between Olympic and Lovell, a copy of which is attached hereto as Exhibit A (the "Charter Agreement" or the "Agreement").

5. Plaintiffs elect to bring this action as an admiralty or maritime claim within the meaning of Fed. R. Civ. P. 9(h).

6. This Court has personal jurisdiction over the parties by virtue of the solicitation, negotiation, and execution of the Charter Agreement in this judicial district.

## III. VENUE

7. Venue is proper in this Court by virtue of the solicitation, negotiation and execution of the Charter Agreement in this Judicial District, and the venue provision at paragraph 9.d of the Agreement.

## IV. FACTS

8. On May 22, 2013, Olympic and Lovel entered into the Charter Agreement for the Lovel Briere (the "Vessel"), a double-hull barge.

9. Olympic assigned all of its rights under the Charter Agreement to HMF on or about May 14, 2018.

10. Olympic and HMF are subsidiaries owned directly or indirectly by Centerline Logistics Corporation ("Centerline"), a premier marine petroleum transportation operator headquartered in Seattle, Washington.

{MEG/006/02985692-1}
COMPLAINT - 2

MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
5500 COLUMBIA CENTER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

11. The Charter Agreement initially called for Olympic to redeliver the Vessel 87 months after the date of delivery, and it provided that Olympic was to pay Lovel a "[m]inimum monthly payment of $75K/month" as a "Hire Rate" to charter the Vessel. (Ex. A, at 1 ("Particulars").)

12. In exchange for the Hire Rate, Lovel granted Plaintiffs "full, complete and exclusive responsibility, possession, command and control of the Vessel and its navigation and operation for the full duration of the charter term." (Ex. A, § 4.)

13. Plaintiffs depended on the fixed term of the Agreement, the $75,000 monthly Hire Rate, and the right to exclusive possession of the Vessel, when executing contracts of varying lengths with Centerline's customers for use of the Vessel.

14. On January 3, 2018, Olympic and Lovel executed an amendment to the Agreement modifying the term set forth in the initial agreement (the "Amendment"). The Amendment provided that the charter would continue for one hundred twenty (120) months, i.e., ten (10) years, beginning on January 1, 2018. (Ex. A, at Amendment No. 1.)

15. Plaintiffs negotiated the Amendment so they could include the Vessel in response to a request for proposal (the "Solicitation") from the United States Transportation Command Directorate of Acquisition and Defense Logistics Agency Energy (the "Government") for a contract to transport fuel for the Department of Defense. The Solicitation required bidders to "own the equipment performing the transportation service" or "have the equipment under long-term lease for the duration of the contract period to include the base year and all option years." (RFP § 3.2.) The Agreement provided for a long-term contract with a fixed rate and duration that could not be unilaterally changed by either party to engineer a premature default. In fact, Lovel was pleased with the extension secured through the Amendment because it provided it a consistent and stable flow of cash for the Vessel.

{MEG/006/02985692-1}
COMPLAINT - 3

**MONTGOMERY PURDUE** PLLC
ATTORNEYS AT LAW
5500 COLUMBIA CENTER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

16. Although the Government did not award the contract to Centerline, Centerline entered into other long-term contracts in reliance on Plaintiffs' contractual right to charter the Vessel at a fixed rate for a fixed duration.

17. On September 26, 2022, Centerline, through HMF, renewed a contract with a customer that committed the Vessel for the customer's business for more than a year.

18. The Vessel is currently being used by this customer to remediate supply-chain issues associated with the COVID-19 pandemic.

19. Consistent with the plain language and purpose of the Agreement, Plaintiffs have paid and Lovel has accepted $75,000 as a monthly hire rate for the Vessel since Olympic took delivery.

20. On September 27, 2022, counsel for Lovel notified Plaintiffs by letter that, effective November 1, 2022, it was unilaterally doubling the hire rate set forth in the Agreement from $75,000 to $150,000 per month. A true and correct copy of this letter is attached hereto as Exhibit B.

21. In this letter, Lovel stated that, should HMF refuse to pay the doubled hire rate it unilaterally set, it would accept termination of the Agreement and redelivery of the Vessel to Lovel. (*See* Ex. B, at 2.)

22. Lovel concluded its letter by stating that, in the event Olympic refused to accept the new rate it unilaterally set or agree to terminate the Charter Agreement by November 1, 2022, Lovel would consider Olympic to be in breach of that agreement. (*See* Ex. B, at 2.)

23. As Plaintiffs have the right to exclusive use and possession of the Vessel for the duration of the Agreement's term at a minimum monthly payment of $75,000, they have refused to terminate the Agreement and have refused to pay the doubled hire rate unilaterally set by Lovel.

## V.   CLAIM FOR RELIEF

24. Plaintiffs reallege paragraphs 1-23, above.

{MEG/006/02985692-1}
COMPLAINT - 4

MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
5500 COLUMBIA CENTER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

25. The Charter Agreement is a valid contract.

26. The Agreement requires Plaintiffs to pay a hire rate consisting of a "[m]inimum monthly payment of $75K/month." (Ex. A, at 1 ("Particulars").)

27. Plaintiffs satisfy this hire-rate provision, and have satisfied it, by paying Lovel $75,000 a month since the delivery date.

28. The $75,000 monthly hire-rate payment is fixed until the date set for redelivery and is not subject to unilateral modification by Lovel.

29. The Agreement further grants Plaintiffs "full, complete and exclusive" use and possession of the Vessel "for the full duration of the charter term." (Ex. A, § 4.)

30. The charter term, as modified pursuant to Amendment No. 1 to the Agreement, does not expire until December 31, 2027.

31. Lovel's insistence that the Charter Agreement gives it the unilateral right to increase the hire rate is inconsistent with the contract's plain language, structure, purpose, and the parties' course of dealing.

32. Lovel has threatened that, if Plaintiffs do not agree to pay its unilaterally increased hire rate or agree to terminate the Agreement by November 1, 2022, it will consider Plaintiffs to be in breach of the Agreement.

33. Plaintiffs have refused to terminate the Agreement and have refused to pay a hire rate of anything more than $75,000 a month for the duration of the contract.

34. There is therefore an actual controversy between the parties that is definite and concrete as to their respective rights and obligations under the Agreement.

35. Plaintiffs are entitled to declaratory relief in the form of a decree by this Court that the Charter Agreement, as amended by Amendment No. 1, is a valid and binding contract and is in full force and effect, that the monthly charter hire payable by Olympic to Lovel under the Agreement is $75,000 per month, triple net, and that the term of the Agreement expires on December 31, 2027.

{MEG/006/02985692-1}
COMPLAINT - 5

MONTGOMERY PURDUE PLLC
ATTORNEYS AT LAW
5500 COLUMBIA CENTER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray this Court provide the following relief:

1. A decree by this Court that the Charter Agreement, as amended by Amendment No. 1, is a valid and binding contract and is in full force and effect, that the monthly charter hire payable by Plaintiffs to Lovel under the Charter Agreement is $75,000 per month, triple net, and that the term of the Agreement expires on December 31, 2027.

2. A preliminary and permanent injunction precluding Lovel from declaring a breach under the Charter Agreement and arresting the Vessel.

3. An award of Plaintiffs' legal fees and costs.

4. Such other and further relief this Court deems just and equitable.

DATED this 27th day of October, 2022.

MONTGOMERY PURDUE, PLLC

/s/ Michael E. Gossler
Michael E. Gossler, WSBA No. 11044
Attorneys for Plaintiffs

Kevin H. Marino
(Pro Hac Vice application to be submitted)
kmarino@khmarino.com
John D. Tortorella
(Pro Hac Vice application to be submitted)
jtortorella@khmarino.com
John A. Boyle
(Pro Hac Vice application to be submitted)
jboyle@khmarino.com
Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, NJ 07928-1488

{MEG/006/02985692-1}
COMPLAINT - 6

**MONTGOMERY PURDUE** PLLC
ATTORNEYS AT LAW
5500 COLUMBIA CENTER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

Telephone: 973.824.9300
Facsimile: 973.824.8425
Attorneys for Plaintiffs

{MEG/006/02985692-1}
COMPLAINT - 7

**MONTGOMERY PURDUE** PLLC
ATTORNEYS AT LAW
5500 COLUMBIA CENTER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

## CERTIFICATE OF SERVICE

The undersigned certifies under penalty of perjury under the laws of the State of Washington that I am, and at all times herein mentioned have been, a resident of the State of Washington, over the age of eighteen years, not a party to or interested in the above-mentioned action, and competent to be a witness herein.

On the date written below, I caused this document to be electronically filed with the Clerk of the Court using the CM/ECF system.

DATED this 27th day of October, 2022, at Seattle, Washington.

*/s/ Lisa J Hanlon*
Lisa Hanlon

{MEG/006/02985692-1}
COMPLAINT - 8

**MONTGOMERY PURDUE** PLLC
ATTORNEYS AT LAW
5500 COLUMBIA CENTER
701 FIFTH AVENUE
SEATTLE, WA 98104-7096
(206) 682-7090 TEL
(206) 625-9534 FAX

# EXHIBIT A

# BAREBOAT CHARTER
## (SHORT FORM)

| OWNER | | CHARTERER | |
|---|---|---|---|
| NAME : | Lovel Briere LLC | NAME : | Olympic Tug & Barge, Inc. |
| ADDRESS : | 910 SW Spokane St | ADDRESS : | 910 SW Spokane St |
| CITY, STATE : | Seattle, WA 98134 | CITY, STATE : | Seattle, WA 98134 |
| TELEPHONE : | (206) 628-0051 | TELEPHONE : | (206) 628-0051 |
| FACSIMILE : | (206) 628-0293 | FACSIMILE : | (206) 628-0293 |
| **VESSEL** | | **PARTICULARS** | |
| NAME : | Lovel Briere | DELIVERY : | On or about May 22, 2013 |
| O.N. : | 1205217 | REDELIVERY : | 87 Months |
| DIMENSIONS : | 277' x 78' x 24' | HIRE RATE : | Minimum monthly payment of $75k/month |
| TYPE/USE : | Barge | | |

### SPECIAL AGREEMENTS

The insured value for the vessel is $11,500,000

The charter shall automatically renew and extend in perpetuity until and unless terminated by either party in writing.

This is a triple net lease which includes bank fees and other misc charges.

### 1. BASIC AGREEMENT

Owner agrees to let and Charterer agrees to hire, on a bareboat charter basis, the Vessel identified above pursuant to the terms and conditions of this agreement; the term Vessel shall include the Vessel identified above as well as all machinery, equipment, consumables, stores, furnishings and gear aboard the Vessel at the time of delivery to Charterer.

The bareboat charter term shall commence on the delivery date/time identified above or the actual date/time on which Charterer accepts and assumes control of the Vessel, whichever shall first occur, and continue until the Vessel has been redelivered as set forth herein.

### 2. HIRE, CHARGES AND INTEREST

Charterer shall pay hire, at the rate identified above, from delivery until redelivery, with payment due monthly in advance on the first day of each month unless otherwise agreed. In the event of total or constructive total loss, hire shall continue until Owner has received full payment of the Vessel's agreed value under its hull and machinery policy.

Charterer shall be responsible for all charges and expenses of every kind and nature whatsoever relating to the Vessel and/or its use or operation during the charter term. Charterer shall be responsible for all taxes, except such taxes as are specifically applicable to Owner by virtue of its receipt of hire under this agreement.

Amounts due Owner shall be paid in US currency without discount or set-off; sums due but not paid shall accrue interest at the rate of one percent (1%) per month.

In the event of a total or constructive total loss of the Vessel during the charter term, Charterer shall be obligated to pay hire until Owner has received full value under the Vessel's hull and machinery insurance policy identified below.

### 3. WARRANTIES AND REPRESENTATIONS

The Vessel is bareboat chartered on an "AS-IS" basis with no warranty or representation of any kind or nature whatsoever by Owner. Charterer shall have full opportunity to inspect the Vessel prior to delivery to determine its condition and suitability for service, and may additionally arrange for separate inspection of the Vessel by a marine surveyor or similar technical representative at its expense.

IT IS SPECIFICALLY ACKNOWLEDGED AND AGREED THAT OWNER MAKES NO WARRANTIES OR REPRESENTATIONS WHATSOEVER, EXPRESS OR IMPLIED, REGARDING THE CAPABILITY, CONDITION, SEAWORTHINESS, FITNESS OR SUITABILITY OF THE VESSEL.

### 4. OPERATION AND USE

Charterer shall, at its sole expense, man, fuel, victual, navigate, operate, maintain and supply the Vessel and pay all costs, charges and expenses of every kind and nature whatsoever relating to the Vessel and/or its use or operation during the charter term. This agreement is intended as a demise of the Vessel by Owner to Charterer, with Charterer to have full, complete and exclusive responsibility, possession, command and control of the Vessel and its navigation and operation for the full duration of the charter term.

Charterer shall employ the Vessel only in lawful trades and activities, and shall operate the Vessel only within the trading limits and other conditions imposed by the Vessel's insurances.

### 5. REPAIRS, MAINTENANCE AND ALTERATIONS

Charterer shall make all repairs, replacements and maintenance necessary to keep the Vessel in the same good condition, repair and working order as when delivered, less normal wear and tear (which does not include any damage or deterioration correctible through routine maintenance). Charterer shall not install any gear or equipment on or make any alterations or additions to the Vessel without Owner's prior written consent. Any additional gear, equipment, alterations or additions allowed by Owner shall be Charterer's property and removed at Charterer's expense prior to redelivery.

### SURVEYS; DELIVERY AND REDELIVERY

...or to or at delivery, the Vessel shall be surveyed to comprehensively document its condition. The parties may agree upon an appropriate method by which to survey the Vessel and establish its condition, including drydocking and/or underwater inspection, but any method agreed must include written and photographic documentation.

At the conclusion of the charter term (or sooner, at Owner's option in the event of default), an off-hire survey of the Vessel shall be conducted upon the same method utilized for the on-hire survey, to establish the condition of the Vessel for purposes of redelivery. Every effort shall be made to have the off-hire survey conducted by the same person who conducted the on-hire survey.

The Vessel shall not be deemed redelivered until at the agreed redelivery location and in the same good condition, repair and working order as upon delivery, less ordinary wear and tear. If Charterer tenders the Vessel damaged and/or in need of repair, hire shall continue during the time required for such repairs and the Vessel shall not be deemed redelivered until restored to the same good condition, repair and working order as upon delivery, less ordinary wear and tear.

### 7. INSURANCE

Charterer shall procure and maintain, at its expense, the following insurances upon the Vessel during the charter term:

a. hull and machinery insurance pursuant to Pacific Coast Tug/Barge Form (1979), to its full actual market value;

b. protection & indemnity insurance pursuant to Form SP-23 (1/56), with limits of no less than $5,000,000 per occurrence;

c. pollution and environmental liability insurance, including certificate of financial responsibility, to the extent and with limits as required by law; and

d. if required by Owner and Owner's lender holding a mortgage on the Vessel, breach of warranty insurance in an amount required by such mortgage.

Each insurance shall be subject to Owner's approval, name Owner as an insured, be endorsed as primary to any insurance of Owner, and endorsed to require thirty (30) days written notice to each insured (including Owner) in the event of any cancellation, non-renewal or other material change in policy terms or conditions.

All deductibles, premiums and other policy charges shall be for Charterer's account. Owner and Charterer shall be co-loss payees on the hull policy except Owner shall be sole loss payee in the event of a total or constructive total loss. If required, Owner's lender shall be sole insured and sole loss payee upon the breach of warranty policy.

Charterer shall indemnify and hold Owner harmless (including legal fees and costs) of and from any loss, damage, expense, liability, claim or suit resulting from the failure to procure and/or maintain any insurance as required herein and/or the failure of any such insurance, including exposure to any loss, damage, expense, liability, claim or suit which would have been covered had the insurance been procured and maintained as required herein.

### 8. LIABILITY AND INDEMNITY

Charterer shall be solely responsible for any loss, damage, liability, lien, encumbrance, claim, expense, fine, penalty and/or suit of any type or nature whatsoever, howsoever caused, arising out of and/or relating to the Vessel and/or its use or operation during the charter term or otherwise as a result of this agreement. Charterer shall indemnify and hold harmless (including legal fees and costs) Owner and the Vessel of and from any loss, damage, liability, lien, encumbrance, claim, expense, fine, penalty and/or suit of any type or nature whatsoever, howsoever caused, arising out of and/or relating to the Vessel and/or its use or operation during the charter term or otherwise as a result of this agreement; in furtherance of such indemnity, Charterer shall waive any immunity from suit and exclusivity of remedy afforded by any workers compensation act or similar law.

### 9. MISCELLANEOUS PROVISIONS

a. Liens. Charterer shall not create or incur any lien upon the Vessel except for salvage and/or general average charges incurred in an emergency. Charterer shall specifically inform all vendors that it is the bareboat charterer of the Vessel and lacks authority to create or permit any liens. The Vessel shall be redelivered to Owner free and clear of all liens or encumbrances of any kind or nature whatsoever, other than those created by and/or expressly approved by Owner.

b. Default. If Charterer fails to perform under this agreement, files for or is placed in bankruptcy, or has a receiver appointed for it, Owner may terminate this agreement and retake the Vessel without notice or legal process wherever it may be, with hire to continue to accrue until the redelivery date specified above, without prejudice to any other rights Owner may have.

c. Limitation of Liability. This agreement is not a personal contract and shall not be deemed to prohibit Owner or Charterer the benefit of any limitation upon or exemption from liability afforded to the owners of vessels by any statute or rule of law.

d. Law; Venue; Legal Fees. This agreement shall be governed by the general maritime law of the United States or, in the absence of an applicable general maritime rule of law, by the laws of the State of Washington. Any suit relating to this agreement must be filed in Seattle, Washington, with the substantially prevailing party to recover its legal fees and costs.

e. Counterparts. This agreement may be executed in counterparts and/or by facsimile or other electronic exchange of signatures, with all such counterparts deemed the same single agreement and with signatures exchanged by facsimile or other electronic means deemed equivalent to originals.

f. Entire Agreement. Charterer shall not subcharter the Vessel or assign this agreement without Owner's prior written consent. This agreement may not be modified except through a writing signed by both parties. This agreement constitutes the entire agreement between the parties and replaces all prior and contemporaneous agreements, written and oral.

DATED THIS 22 DAY OF May, 2013.

| | |
|---|---|
| **OWNER** : Lovel Briere LLC | **CHARTERER** : Olympic Tug & Barge, Inc. |
| Signature : *(signed)* | Signature : *(signed)* |
| Name/Title : Harley V Franco / Member | Name/Title : Todd Prophet / Vice President |

Lovel Briere 05.22.13                                                                 2

## Amendment No. 1

## TO BAREBOAT CHARTER

*Dated May 22, 2013*

This Amendment No. 1 to Bareboat Charter shall be deemed effective as of January 1, 2018 ("New Effective Date") by and between Lovel Briere, LLC (the "Owner") and Olympic Tug and Barge, Inc. (the "Charterer") (the Owner and Charterer herein sometimes, collectively, the "Parties"). The Original Bareboat Charter, as amended by this Amendment No. 1 and as may be further amended from time to time hereafter, the "Charter".

**WHEREAS**, the Owner and the Charterer desire, by this Amendment No. 1 to extend the duration of the Charter for a period of time extending one hundred twenty (120) months from the New Effective Date (the "New Charter Period"), unless the Charter shall be terminated earlier, pursuant to the provision of the Charter.

DATED THIS 3rd DAY OF January, 2018

Owner: Lovel Briere, LLC

Signature: _____

Name/Title: Harley Franco / Member

Charterer: Olympic Tug & Barge, Inc.

Signature: _____

Name/Title: Matt Godden / Vice President

# EXHIBIT B



**Jess G. Webster**
jess.webster@millernash.com
206.777.7560 (direct)

September 27, 2022

**BY FIRST-CLASS MAIL AND EMAIL**

kmarino@khmarino.com; mgodden@centerlinelogistics.com

Mr. Matt Godden
Centerline Logistics Corporation
Harley Marine Finance, LLC
910 West Spokane St.
Seattle, WA 98134

Mr. Kevin Marino
Marino, Tortorella & Boyle, P.C.
437 Southern Boulevard
Chatham, NJ 07928-1488

Re: Barge LOVELL BRIERE
Notice of Charter Hire Rate Increase

Dear Mr. Godden and Mr. Marino,

On behalf of our client, Lovel Briere, LLC (Lovel), Notice hereby is given to you of the increase of the charter hire rate of the Bareboat Charter of the barge LOVEL BRIERE, pursuant to that Bareboat Charter agreement by and between Lovel, as Owner, and Olympic Tug & Barge, Inc. dated May 22, 2013 (the Charter), which Charter was assigned and assumed by Harley Marine Finance, LLC (HMF).  Effective as of November 1, 2022 the charter hire rate under the charter shall be $150,000 per month.

The Charter was written to require a charter hire of a "Minimum monthly payment of $75K/month" specifically to provide for periodic adjustment to cover increases in in inflation and the cost of living and to ensure that the rate was within the range of market rates for similar barges.  Since May of 2013 the charter hire rate has not been increased and Lovel has experienced increases in the interest rate and finance fees imposed by its secured lender, which we understand was due in part to HMF refusing access to the barge by the lender's surveyor, as is the lender's right under the preferred mortgage against the barge.  The increased charter hire rate is in conformity with current market rates for the barge, which are currently in the $4,500 to $6,000 per day range.

4877-0616-2227.4

California
Oregon
Washington
MILLERNASH.COM

Pier 70 | 2801 Alaskan Way, Ste 300 | Seattle, WA 98121

Mr. Matt Godden
Mr. Kevin Marino
September 27, 2022
Page 2



If HMF objects to the rate increase Lovel would accept the termination of the Charter by HMF at this time. Alternatively, Lovel would also consider the sale of the barge to HMF or its designated affiliate on an all cash basis, with a closing to take place on or before November 1, 2022. Should HMF be interested in purchasing the vessel, Lovel will consider a reasonable offer from HMF.

Should HMF elect to terminate the Charter, Lovel would like to avoid the difficulties that accompanied the termination of the charters of the tugs owned by Tug Construction, LLC. To that end, the redelivery of the barge would need to be made to an agreed location in Seattle, Washington on or before October 31, 2022, that all tanks and holds must be cleaned and certified as gas free. Although Lovel will consider the use of a joint off hire surveyor, if a joint off hire surveyor cannot be agreed upon Lovel will designate Mr. William Kelley of Gig Harbor Technical Services, LLC as its designated surveyor. Lovel proposes that Mr. Kelley participate in a simultaneous survey of the barge along with HMF's designated surveyor, followed by a negotiated process for determining whether the barge satisfied the required redelivery condition set forth in the Charter, and as to the scope of any required maintenance and repairs to return the barge to its condition at time delivery, less ordinary wear and tear, but not including any condition correctable by timely and proper maintenance and repair.

If HMF elects to terminate the Charter we request that HMF share with Lovel its maintenance and repair records for the barge and all records from any recent drydocking/shipyard repairs of the barge, including photographic evidence as to the condition of the areas of the barge below its waterline. Lovel also requests that HMF produce its files relating to the barge's classification compliance and its files on the barge's Certificate of Inspection compliance. Based upon the information provided, it is possible that Lovel would agree to forego a drydocking of the barge to confirm the condition of the barge below the waterline.

Lovel requests HMF's prompt response to this letter indicating whether HMF opts to accept the charter hire rate increase or to terminate the Charter. In the event HMF does not accept the charter hire rate increase and does not elect to terminate the Charter, HMF's continued possession of the barge without paying the increased charter hire as of November 1, 2022, Lovel will be considered a breach of the Charter. Accordingly, the prompt and clear communication of your intentions in this regard will be appreciated.

Very truly yours,


Jess G. Webster


4877-0616-2227.4

Mr. Matt Godden
Mr. Kevin Marino
September 27, 2022
Page 3



Cc: Lovel Briere, LLC; Attn. Harley Franco

4877-0616-2227.4